Good morning, Your Honor. Alan Jacobus on behalf of the plaintiff and appellant 1075 Market. I'd like to reserve five of my 20 minutes for questions or rebuttal, please. All right. I'll try to keep an eye on the clock for you, but keep track of your own time as well, please. Thank you, Your Honor. The court knows that this case is before it because the district court dismissed 1075 Market's complaint on Rule 12 motions. The 1075 Market complaint stated causes of action mainly in nuisance, and those are the ones that are before the court. And that nuisance was based on several facts. One, that these same developers who are building this clinic that is going to have its door on Stevenson Street Alley, more or less right across the street from the backside of 1075 Market, put on a health fair in June of 2019. And during that health fair, people got syringes from the clinic. They went out in the street. They shot up. They passed out. People could not move them along. Can I ask a question about the government in this case? Are your claims for injunctive relief against the government now moot given the property has been transferred? No, because we understand that there are still things that the United States has with respect to the property. There's still control. We haven't had discovery on the issue, but our understanding is that no, that process is not complete and that the United States still has a say in the way that the project is handled. So what relief are you seeking against the United States at this point? Well, they're all common actors, and the relief sought and complaint is that the developers, including the United States, move the entrance from Stevenson Street Alley, which is a small alley. It's on the backside of the courthouse where there isn't a lot of police activity unless they're called for crimes. It's just not well patrolled. That's not a lot of car traffic. There's not a lot of foot traffic into moving to Mission Street, which has a lot of vehicular traffic, a lot of foot traffic. A lot of this point have a role in determining the location of that door. Our allegations are that they are part of a common group. Enterprise liability is a good analogy, and yes, they do, that they could influence the others to move the entrance of the point from Stevenson Street to Mission Street. Could they mandate it given that they've already transferred the property? Do they have the legal authority to compel the door to be moved? My understanding is that they do. And what is that based on? Well, they granted the property and they still have a say in the project. And one of the things, one of the arguments... They granted the property. How, what, what legal basis do they have to require the door to be moved? Well, again, without the benefit of discovery and based on the arguments that the United States made in its papers, they say that there's no final agency action for one thing, meaning that they have control over the project. See, I thought that the relief that you were seeking is to enjoin the government from transferring the property, and now that it's transferred, seems like it's a done deal. And so I'm not sure what additional relief you're really seeking from HHS at this point. All the parties are common actors in the building of this development and the location of the entrance. And so the government has say where that door is placed. The United States... Well, would you amend your complaint to assert that? I mean, because it says in the demand for relief against the United States, HHS only, enjoining Alex Azar and the United States, from transferring property to ECS Mercy and or the city of San Francisco for purposes of constructing the 1064 mission development. We can't grant that relief because it's moved. The property's already been transferred. But again, part of that relief sought is with respect to the construction. And I think that relief is broadly stated enough that the United States has say over the construction and the project. It certainly did as it was negotiating and evaluating the... Right. The way that it's phrased is enjoining HHS from transferring the property for purposes of construction. So that's done. Well, time has passed and we could amend the complaint on remand to account for that possibility. Are you asking, was one of your relief then to unwind that transfer? No. The relief that we're seeking is for the door to be moved from Stevenson Street to Mission Street. So then what you're asking really now is to go back to the district court for an opportunity to seek leave to amend the complaint. On the theory that now the government has some say in where the door's located to do discovery on the extent of the government's control over the placement of the door. Right? Yes, Your Honor. But you need to plead facts first that establish the government's control. And I read your complaint in your demand for relief to say that the government has that control because it can insist on it as a condition of the transfer. But once it transfers the property, that leverage is gone. And I don't see facts pleaded that establish some other legal lever whereby the federal government can require this door to be moved at this point. Well, it's been a long time since the complaint was filed. And so facts have changed. Part of that project is currently built. There have apparently been transactions between the United States still has say in that project and would still have leverage as to whether or not the developers, collectively the developers, placed that door on Stevenson Street or on Mission Street. If we were, for one reason or another, to dismiss the United States from this case, would it be inappropriate at that point? Uh, why wouldn't we just order the remainder of the case to be dismissed without prejudice to refiling this very local intensive land use issue in state court? I can't think of a reason why, Your Honor. The federal jurisdiction is premised primarily on the United States being a part of it. That's the sole federal claim that is keeping the case in jurisdiction. Why shouldn't supplemental jurisdiction be declined if the United States is dismissed from this case? This is an intensely local landloose use issue that seems to scream for state court treatment. Well, two things here, Your Honor. If you did dismiss the United States, I agree that there is no remaining federal jurisdiction. But I disagree that this is an issue because you have the fact here that the United States is involved. Typically, the United States is not involved in land transfers of this sort. They are here. They had a say in this. They approved papers from the City of San Francisco and the developers to go forward with this project. So the United States has a hand in this, and there is a federal interest. The transfer of property was not conditional in any way, was it? Again, without the benefit of discovery, Your Honor, we don't know, and a lot of time has passed since the complaint was filed. Can I ask a little more about the federal common law nuisance claim that you're making? All the cases you cited in your briefs dealt with interstate nuisances, pollution, and so forth. Is there any case that deals with, as Judge Collins says, a local land use nuisance? Not that I'm aware of, but our position is that this is federal common law, and like the rest of the common law, it changes with time and circumstances. I don't think that a federal court has applied the federal nuisance doctrine in this particular way, but I think it's a logical extension, and there's no reason not to. The federal courts cite to things like the restatement of courts and other things, and I think that when you take a look at the restatement and what it calls a nuisance, that certainly a modest extension from those cases that you referred to, Your Honor, is warranted in this case. Well, why would it be necessary if there's state nuisance doctrine that could deal with this issue? What is so uniquely federal about this besides the former owner of the land? Well, we have stated federal common law nuisance claims against the United States and have asserted state law claims against the remaining entities, the City and County of San Francisco, ECS, and Mercy. What's before the court still is all two different avenues. I understand that. Could you file a state nuisance claim against HHS here? I don't know the answer to that. I think that there are some prohibitions under maybe the Federal Tort Claims Act, and so the avenue is federal common law against the United States. You still have some time. Do you want to address issues of standing? Yes. So, with respect to standing, in paragraph 86 of the complaint, 1075 Market alleges that the property values have been damaged in the building, and had discovery gone forward, we could have established that the property values had been damaged in the building. We could have established that there has been significant diminution in the value of the property, and the other side is going to dispute causation. Again, that's a matter for discovery in what should have been decided or not decided on a motion to dismiss the United States. Have you pleaded facts to show that those problems are fairly traceable to the one thing that you're the placement of the project as a whole in that spot, and that seems to be alone as a magnet, and so given that you've focused on one element, your fair traceability has to also be focused on that element. What facts have you pleaded to show that it's really the door and not the facility as a whole? Well, we're not challenging the facility. The facts pleaded with respect to the medical clinic are that the same actors put on a health fair in June of 2019 that resulted in drug use in the streets, drug sales around the development, or not the development where the health fair took place. Then we have the statement from Dr. Pache, who is affiliated with a sister clinic who talks about the clinics of this type. Unfortunately, drug dealers prey on the clinics and congregate around there, and open-air drug markets sprout up, and that is the nuisance that 1075 Market does not want associated with the back alley where its pedestrian exit is, one of its pedestrian exits is, and where its sole vehicular entrance is. With respect to the diminution of property value and standing, it's clear, I think, that standing exists. The Barnum Timber case out of this court, 633 Fed 3894, quote, a reduction in the value of property owned by the plaintiff is sufficient to demonstrate injury in fact of the pleading stage. Of course, we're at the pleading stage here, and also have friends of the earth out of the United States. Is your theory that you have present diminution in value, or is it that it will diminish in the future? It's all, from June 2019, from the health fair, through the present, and then part of it is that any seller of property in 1075 Market, under California state law, has to fill out a form disclosing, for example, the June 29 health fair, and also the existence of that clinic at the back door. So that's a very tangible thing. Under California law, sellers have an obligation to disclose those things. And under what theory do you have to disclose it, that it was a prior nuisance of some sort? Yes, and it's in our appendix. The form is in there, and I don't have it at my fingertips, but when I come back with my reserve time, I will point the court exactly to where that form is. So I've addressed standing. Are there any other issues? There are a lot of issues here. Are there any other issues that the court would like to hear? Yeah, I do have a question on the state nuisance. It's not that the clinic is interfering in any way with your property. It's third parties in the streets that are interfering with property. Am I right on that? Well, no, because the clinic is interfering with the property to the extent that it is attracting the people who are acting in the street. That is the theory. And so the opposition has made the point that, look, these third party actors, we have no control over them. But if you look at Dr. Pache's statement, where he's talking about clinics of this type that provide opioid addiction treatment in this clinic, we didn't take up the judicial noticing, but the district court weighed evidence and decided that the clinic was not going to be providing prescription medications. And that's wrong. At least it contradicts what they told us, what the developers told us in pre-suit negotiations. But yes, the nuisance is that this clinic will attract, based on the comments, but based on what we saw on June 19th from the health there, and then also based on what Dr. Pache's talked about with sister clinics, it's going to attract a crowd. And that is enough to establish nuisance under California state law. Do you have a case to support that? I just didn't see that. I'm sorry, I missed the first part. Oh, it's Lou. It's 20 Cal App fourth at 866 in Benetados, B-E-N-E-T-A-T-T-O-S. That's at 235 Cal App fourth, 1270. Both deal with   criminal activity on property that creates a nuisance, causes a nuisance, an actual nuisance. Were those on property though? Because your theory is not on property, it's off the property. Well, associated with the property, I think those cases... Are those the flop house cases? Flex, the other I believe is liquor store. Okay. You want it to reserve time? Yes, please. All right. I understand that Mr. Van Duzer and Mr... Is it Ivangar? Or splitting your time? It's Iyengar, Your Honor. Iyengar, 12 and eight minutes each. So if you want it to reserve... No, you're at the appellee, so you don't have reserved time. Who's going to start? I will, Your Honor. All right. Your Honor, Richard Van Duzer on behalf of Mercy Housing of California, as well as the Episcopalian Community Services of San Francisco. I'm making this argument on behalf of my clients, and I'm also making this argument on behalf of the city as well. Mr. Emery is here in the event that the court has questions of him, but we agreed that I would take the labor more on the oral argument. I think with respect to the federal questions that you raised and the jurisdictional questions you raised with respect to the federal property, I'll leave that to Mr. Iyengar to address. I think he's more appropriately, I think, able to respond to those for you. What I'd like to do is focus on the standing question that is before the court. Before you go, I understand you're deferring to Mr. Iyengar on the federal issues, but if we were to dismiss the government, what is your position on whether or not supplemental jurisdiction should be declined at that point? I think at that point, Your Honor, supplemental jurisdiction would have to be declined, and the case would be dismissed without prejudice from Mr. Jacobus to decide whether he wants to address that issue before the court. Wasn't that a discretionary call to be made by the district court? I think the district court in this case chose at the time it made this decision not to address that issue because the property hadn't been transferred. The district court obviously did rule that it did not have jurisdiction on Article III standing grounds, and so I believe that you could reach this same decision without necessarily reaching the decision on the issue of the federal question. It is a jurisdictional question. If we were to dismiss HHS from this case, then essentially you can go back to the district court and address the issue of whether the district court wants to retain the case under supplemental jurisdiction. Yes, that is true, Your Honor. I agree with that. I was simply trying to respond to the question about whether we thought at that point it would be appropriate for the district court to retain it, but you're correct. It would be for the district court to decide. I mean, if it were a circumstance where we can already tell that it would be an abuse of discretion to keep the case in federal court, would we have the authority at that point to order the district court to dismiss it on remand? Yes, I believe you do. I believe that this panel has the discretion to decide jurisdictional questions, and if this panel decided it would be an abuse of discretion to maintain jurisdiction under these facts and circumstances, yes, I believe you have the discretion to dismiss it altogether without prejudice and not remand it for the district court to consider. Back to standing. Back to standing. I think to consider standing here, you need to back up and take a look at what really is being alleged here. In November of 2019, this lawsuit was filed. It was filed, as you've noted, to simply do one thing, to force these defendants to change the location of the urgent care clinic that was planned to be located in the project. The project at that point hadn't been built, the ground hadn't even been broken, and it was not anticipated that the urgent care clinic would even be open and operating until at least late 2021, possibly into 2022. The grounds that were asserted for this claim are that not that there was any actual current injury caused by any nuisance, because there was not one. There was a plan, a design, to build a building that had an entrance located on Stevenson Street. That plan, that design, is not a nuisance. The building, when constructed, is not a nuisance. The nuisance, according to the plaintiffs, doesn't arise until after the clinic is up and operating. And after people start coming... If I'm a landowner and a property is being developed next door, and they're going to put a big nuclear waste facility, and the plan is just to sort of discharge everything into the air and into the back of the facility, I have to wait until they actually finish the plan and start discharging before I can go into court and say this needs to be stopped. It's an impending, certainly impending nuisance? No, Your Honor. I don't believe that you would have to wait for that injury to occur. The case law on standing is fairly clear under Clapper and under Susan B. Anthony List, which was decided after Clapper and this court's own opinion in Reza Pappos, that there is perhaps standing and there is perhaps a nuisance claim if, and this is a big if, if the future threat of injury is certainly impending or substantially likely to occur. They've pleaded facts that say that, now they're not challenging the facility itself, but the facility will draw a lot of drug trafficking activity in the area, and then the placement of the door channels the persons who are likely to engage in that activity into Stevenson Alley and thereby creating the nuisance. So why is that different from we're building the factory and here's where the exhaust pipe is going and I can see where it's going to go and it's going to hit me. Why isn't that this case? Well, I think there are some differences, Your Honor, between this case and that case. In the first place, there are really only two allegations that go to the likelihood that a nuisance is going to develop here down the road, and that is Dr. Fauci's statements and the argument that has been made with respect to the health fair. Those are two very, very different circumstances. The quote from Dr. Fauci is ambiguous. It doesn't by any means establish that there's a nuisance, even at the location of the clinic he was talking about, which isn't this clinic. It's another clinic in the Tenderloin. And if you read his statements, he says it's hard to know what the impact of that facility is on the neighborhood. He says that they may have a positive impact. They may have some negative impact. But that statement in and of itself does not, we believe, establish the type of certainly impending future injury that you, in your example, articulate with respect to the plant you are hypothetically going to be building. The other part of this, which is the health fair, took place in June of 2019. It was open to the public. Dozens of people were entering the clinic at any particular point in time. Syringes were dispensed at that clinic. And the facts that were alleged are that there was not that there was problems within the area of the health fair. The allegation is that once those people left the health fair, they did things that created a nuisance or created difficulty for the neighbors. The actual activity within the health fair, where the Department of Public Health and the city were focusing its efforts, was not the problem. Why is that not enough to establish injury, then? It might not be enough to establish nuisance, but that seems enough to establish injury. Well, it's only enough, Your Honor, if you believe that that fair has the kind of predictive value that leads you to conclude that in this particular circumstance, in a clinic, where people are not coming and going as they please, where they are not open... That the purpose of the fair was to demonstrate the effect on the clinic on purpose was to give predictive value. And I would argue in response to that, Your Honor, that the fair itself, if you look at the complaint, you look at the allegation, the allegation, and the quote they cite to support that allegation, is that the activity within the fair was not the problem. The activity in the fair where the people were located, where they were actually addressing the issue wasn't the problem. The problem was outside in the area surrounding it. And in this case, the district court, we believe, properly took judicial notice of the plans that the city has in place to address security and safety. Your argument is going to where the district court went, which is really to engage in the facts and really engage in some areas where the facts are disputed, looking at the letters in conjunction with the allegations, and then drawing inferences against the plaintiff. And that's not appropriate to do at this stage, is it? I believe that what the district court did, Your Honor, was in fact appropriate. And the reason it was appropriate is that the plaintiffs in their own complaint, in paragraph 79 of the complaint, specifically alleged that the city was not responding to their concerns for safety and that the city had no plans to manage security and safety in the area of the clinic. The plaintiff admitted that that reference was to a letter that the city had sent. And the court, properly we believe, took account of that letter, incorporated it by and took judicial notice of it because the underlying purpose of that doctrine is to preclude a plaintiff from referring to a document in its complaint. That document was important. It formed part of the basis of the complaint because it essentially was being used as evidence for why. The complaint doesn't mention the letters. And so I think to the extent that the information in the letters are relevant, those should be put in declarations under penalty perjury and resolve at the summary judgment stage. I guess, Your Honor, I would disagree with that in the sense that the paragraph that I'm citing in the complaint specifically referred to a response by the city on August 5th, which Mr. Jacobus, in the underlying action with the district court, admitted was an error and conceded and admitted it was a reference to the letter that had been received that the district court took judicial notice of. And so we think that under those circumstances, it was appropriate. Which paragraph in the complaint are you citing to specifically? Paragraph 79, Your Honor. And then in paragraph 81 was the specific reference to the second letter that the district court took judicial notice of. I think I've run out of my time. Thank you. All right. Thank you. Good morning, Your Honors. And may it please the court, Savit Iyengar, Assistant United States Attorney on behalf of the U.S. Department of Health and Human Services. Your Honors, I'd like to start by addressing the questions that Your Honors raised earlier. Judge Collins had asked whether injunctive relief against HHS is now moot, given that the property has been transferred. Judge Collins and Judge Nguyen both asked whether the United States has a role in determining the location of the door. Judge Nguyen also asked whether the transfer of the property was conditional. And Judge Bumate asked whether there were any federal interests here, given that the project is intensely local and whether there are any cases dealing with local land use issues in this context. With respect to Judge Collins' first question, whether injunctive relief against the United States is now moot, given that the property has been transferred, our response is that it is moot. There's no live dispute for the court to resolve with respect to HHS, since GSA already transferred the property to San Francisco. Now, Patchett considered this issue, Your Honor, and there the plaintiffs sued to enjoin the secretary from accepting title, which was denied. And as the court explained, the secretary's action of taking the property into trust thereafter, quote, mooted Patchett's request for an injunction to prevent the acquisition. And all parties agree that the suit now effectively seeks to divest the federal government of title to the land. Here, 1075 sued to stop the secretary from transferring the property to HHS. And now that it's been transferred, perhaps the suit could be seen as effectively seeking to divest San Francisco of title to the land, but it doesn't apply to the federal government. And of course, they've disavowed that position. They're not seeking to unwind the transfer. They simply want to move the door. Now, Judge Nguyen and Judge Collins both asked whether the United States has a role in determining the location of the door. It does not. The United States had no role in the past. It could not have changed the door's location. HHS reviewed the application based on the factors in the McKinney Act, and the door's location is not related to any of those factors. Indeed, local land use decisions are left to the applicant under the regulation. What's the government's role in the project now? Is it transfer the property and it's stepped back and is doing absolutely nothing? Or is it still involved in some respects? The government is monitoring the implementation of the program, Your Honor. So if the program does not become operational, then the government would retain a reversionary interest. But if the does become operational, then that's not an issue. So if it didn't become operational, then the title would revert back to the United States. Pursuant to a process that's right, Your Honor, the title, the quiet title that was, excuse me, the quick claim deed that was transferred contains a reversionary interest that is consistent with the terms of the McKinney Act and its implementing regulations. So if the program does not become operational, excuse me, I'm sorry, Your Honor, go ahead. So under the McKinney Act and its regulations, does the government retain any sort of superintending authority over the management of the project or the completion of the design? Absolutely not, Your Honor. The interest that we see set forth in the regulations reflect that HHS defers to the applicant to comply with those sorts of things. And we see that in 45 CFR 12A.9B10. We defer to the applicant to comply with all local land use restrictions, including local building code requirements. And all they need to do is indicate that they will comply, not explain to us how they'll comply. So once we've transferred the property, what HHS cares about is that the program becomes operational on time. Couldn't HHS demand that the building not be created a nuisance? That's a difficult question, Judge Bumate. Yes, insofar as we can require that the applicant comply with all laws. Right. So in that sense, yes, we can. But in order for, sorry, go ahead, Judge Bumate. Oh, no. Yeah. I mean, so if a court were to hold that placing the entrance at that location would create a nuisance, HHS's position would be you have to comply with the law and move the entrance, wouldn't it? I'm not sure that HHS would take a position on how the nuisance was abated, but you're right. If a court held that there was a violation of the law, then we could exercise our reversionary interest if the applicant, or now the owner and operator of the property, didn't cure that violation. And so how they go about curing that violation is up to them. So I don't think I would view that as HHS dictating to them that they needed to move the entrance, but rather, you know, either a court telling them to do so or HHS telling them to cure the violation of state law before it could exercise its reversionary interest. And I think that addresses Judge Nguyen's question about whether the transfer of the property was conditional. That is the condition upon which the property is transferred. But again, we're not sure that it changes the court's analysis here. And with respect to Judge Bumate's question, Judge seems to be intensely local. And whether there are any cases dealing with a local land use issue like this, it is certainly our position that in order to assert a federal common law nuisance claim, there must be an interstate or international dispute implicating the conflicting rights of states or our relations with foreign nations. And this case, of course, involves a single door facing a sidewalk in San Francisco. Now, Appellant concedes that the standard is... facility. Your view is that that would not be governed by federal common law, but would be governed by state law in a suit against the U.S.? It wouldn't be like a Clearfield Trust situation? That's right, Your Honor. It would not be governed by federal common law. Appellant's argument on appeal is that wherever the United States is a party, it's subject to federal common law nuisance claims simply because the United States is a party, without having to show the presence of any substantial and widespread harm. And I just want to emphasize, Your Honor, that that has no support in any case law. It doesn't have any support in the two cases they cite. And of course, the sole case that Appellant relies on to assert a federal common law nuisance claim against the federal government in the first place, which is the Michigan case, makes clear that the claim is reserved for significant, quote, interstate nuisances, close quote. They're a, quote, ecological disaster, close quote, caused by the depletion of the Great Lakes fisheries and the collapse of billion-dollar industries that depend on the existing ecosystem, which in that case affected at least the four states that bordered Lake Michigan. This, of course, is not alleged here because it cannot be alleged in this case. And one question, could they assert state nuisance claims against HHS? I believe Mr. Jacobus' response was no, they would be blocked by the FTCA. I suppose Judge Bumateu would depend on the nature of that claim. If someone brought a state nuisance claim against HHS based on damages they allege they suffered as a result of that nuisance, then that would be allowed under the FTCA. All right, I see your time's nearly expired. Thank you, counsel. Thank you, Your Honor. I have no further arguments. Mr. Jacobus? Just a couple of brief points, Your Honor. Judge Bumateu, the real estate transfer disclosure statement is in our brief at pages 288 to 292. Thank you. I wanted to address Mr. Panduza's argument that the health there all went well, that the problem was on the street. We've made allegations in our complaint that the city of drug use, crime, those sorts of things. So I don't think that that argument holds water. The argument that I made earlier where the nuisance isn't necessarily what happens on the property, but what the property or its owners attract is the nuisance that it issued here. And with that, I don't have any further argument and 1075 Market would ask for remand and further proceedings in the district court. Thank you. All right, thank you very much to all counsel for your argument today. We'll be in recess. Thank you.
judges: Nguyen, Collins, Bumatay